CALIFORNIA VEGETABLE UNION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20339. Promulgated June 30, 1931.

*Claude I. Parker*, *Esq.*, *George H. Koster*, *Esq.*, and *John B. Milliken*, *Esq.*, for the petitioner.
*J. L. Backstrom*, *Esq.*, for the respondent.

OPINION.

MATTHEWS: The petitioner is claiming special assessment upon three grounds: (1) That upon its organization it acquired valuable good will which was not included in its invested capital and the entire value of which could not be so included on account of the limitations of section 326 (a) (4) and (5) of the Revenue Act of 1918; (2) that capital items had been charged to expense and that the amount thereof could not be determined; and (3) that inadequate salaries had been paid to its officers during the fiscal year ending August 31, 1920.

Section 327 of the Revenue Act of 1918 provides in part as follows:

That in the following cases the tax shall be determined as provided in section 328:

(a) Where the Commissioner is unable to determine the invested capital as provided in section 326;

\* \* \* \* \* \* \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, \* \* \*

We have held heretofore that the mere exclusion of an asset from invested capital does not entitle a taxpayer to have its tax computed under the provisions of sections 327 and 328, but that it must be shown that such asset was valuable, that it was a material income-producing factor and that its exclusion created an abnormality in income or invested capital. *Sanford Cotton Mills Co.*, 14 B. T. A. 1210.

It is doubtless true that the petitioner in this proceeding acquired upon its organization something in addition to the tangible assets and that its earnings and dividends were large in proportion to its tangible assets. The petitioner contends that it acquired good will of a value of at least $300,000 and that its earnings were attributable to a great extent to this good will. We do not believe that the petitioner acquired any good will upon organization. Good will has no existence separate and apart from an established business. *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626; *certiorari* denied, 273 U. S. 763. In *Metropolitan Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, the Supreme Court said:

Undoubtedly, good will is in many cases a valuable thing, although there is difficulty in deciding accurately what is included under the term. It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently. Mr. Justice Story defined good will to be " the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessity, or even from ancient partialities or prejudices." Story Part. sec. 99.

All that the petitioner acquired was the vegetable businesses of three companies, one of which had only been in existence about two years. All of the companies remained in existence and retained their corporate names. Two of them continued to carry on the fruit business and one of them continued to own and operate ranch properties. The petitioner did not acquire the name of any of these companies nor did any of them agree not to compete in business with the petitioner. Some authorities hold that both of these elements are necessary to constitute good will. It is hard to see how good will of a company can be divided and a part of its good will transferred with a part of the assets.

It is also true that the petitioner, even if it did not acquire good will, acquired intangibles of some value in the qualifications of the officers, their clientele and in various contracts assigned to the petitioner by these companies. In *Marc Eidlitz & Son, Inc.*, 18 B. T. A. 187, special assessment was granted where the evidence showed that the earnings of the corporation were attributable to conditions not properly reflected in invested capital such as its reputation of long standing, the character of its personnel, and other intangible factors, and that unlike any other taxpayers in its particular line of business it operated on a cost-plus basis which involved current outlay by its clients and limited risk to itself. In that case it was shown that there was an abnormality. In the instant proceeding we have no evidence that the exclusion of the intangibles from invested capital created an abnormality or that the earnings were attributable to any great extent to the intangibles. See *Ault & Wiborg Co.*, 10 B. T. A. 183; *Union Drawn Steel Co.*, 15 B. T. A. 761. It appears, on the contrary, that during 1903, the first year after its organization, a large part of the petitioner's business was done on a commission basis, which did not require a large amount of invested capital. It is not shown that the petitioner's invested capital as compared with other corporations engaged in a similar business is other than normal. In such a situation section 327 has no application. In *Enameled Metals Co.*, 14 B. T. A. 1392, we said:

* * * These favorable conditions may indicate good management and may have resulted in substantially larger income than could have been hoped

for under less favorable conditions, but in our opinion they do not create abnormalities in either the capital or income. Section 327 of the Act expressly provides that it shall not apply to any case in which the tax is high merely because the corporation earns a high rate of profit upon a normal invested capital. The record leads us to believe that this was the situation of the petitioner. No two businesses can be alike in all their factors. Each is bound to have certain favorable or unfavorable conditions as compared with others. It was not to such things as these that Congress had reference in the use of the word abnormalities in section 327, but rather to those situations where by reason of some peculiarity in the corporate structure, invested capital was unusually small as compared with the total capital employed in the business or income was affected by some unusual circumstance. * * *

See also *Troy Motor Sales Co.*, 14 B. T. A. 546, and *Railroad Supply Co.*, 15 B. T. A. 1224.

As to the contention that capital assets had been charged to expense and that the amount thereof could not be determined, the record shows that the revenue agent, in computing the amount of invested capital, which amount was used by the respondent in determining the deficiency, went over the books of the petitioner from 1917 on and restored capital items which had been erroneously charged to expense to invested capital. W. E. Empey, auditor of the petitioner from 1913 to 1917, testified that it would be possible to pick out definitely the various items which had been erroneously charged to expense as far back as 1915. The only items concerning which the witness testified were automobiles, the ordinary life of which is four years. It is clear that the cost of any automobiles erroneously charged to expense would have been fully depreciated prior to the taxable year. Since the amount charged to expense can be determined as far back as 1915 and since there is no evidence that any items charged to expense prior to that time are still in existence the petitioner's claim on this ground must also be denied. *Union Drawn Steel Co.*, *supra; Cohn Goldwater Co.*, 15 B. T. A. 970; *Cramer & King*, 13 B. T. A. 399.

There remains only the question of salaries. The evidence does not establish that the salaries paid were lower than those paid by other corporations. The only testimony on this point is that of the witness Jones, formerly chief deputy collector in Los Angeles. He testified that the salaries paid by the petitioner were less than those paid by other corporations engaged in the same line of business and making about the same amount of gross profit. Upon cross-examination it appeared that his knowledge of the duties performed by these officers was based upon his observations when he went to the offices of the companies in connection with income-tax matters, spending a period of about four days a year. We do not consider that this is sufficient to establish that the salaries paid by the peti-

tioner were inadequate. Moreover, there is no showing that such inadequacy, if there were any, created an abnormality. See *Maryland Car Wheel Co.*, 19 B. T. A. 356.

*Judgment will be entered for the respondent.*